**FULTON FIRE INSURANCE COMPANY,**
Appellant,

v.

**FIRST STATE BANK OF WILLIS, Texas,**
et al., Appellees.

No. 3936.

Court of Civil Appeals of Texas.

Waco.

Jan. 18, 1962.

Rehearing Denied Feb. 8, 1962.

Bryan & Patton, Houston, for appellant.

Darden, Fowler & Creighton, Conroe, for appellees.

McDONALD, Chief Justice.

This is a suit upon 2 fire insurance policies brought by the owners of the insured house, Mike Lucher and wife, Lucy Lucher, and the First State Bank of Willis (as lienholder on the house), as plaintiffs, against the defendant insurance carrier. Defendant defended on the ground that the fire was a fraudulent loss, and alleged that plaintiffs Lucher and wife either burned the house, or caused and procured other persons to burn it, so that they could collect the insurance thereon.

Trial was to a jury which, in answer to issues, found that the house burned to a total loss, and that Mike Lucher did not burn the house, did not procure some other person to burn it, and did not consent to the burning of it.

The Trial Court entered judgment on the verdict for plaintiffs for $4500, the amount of the 2 policies.

Defendant Insurance Company appeals, contending the Trial Court erred:

1) In refusing to allow the witness Williams to testify to his conclusion that the house had been set on fire.

2) In refusing to admit in evidence portions of a prior written statement of the plaintiff Lucy Lucher.

3) In refusing to allow cross examination of plaintiff Lucy Lucher regarding prior statements she had made.

We revert to defendant's 1st contention that the Trial Court erred in refusing to allow the witness Williams to testify that it was his conclusion that the house had been set on fire. Defendant plead that the house was burned by the Luchers or someone procured by them. The plaintiffs' witness Perry, who was Fire Chief of Willis, testified that the house was a total loss; that after the fire there was left only a bunch of rubble and tin and tinware from the house and rubbish from the furnishings; that he made an examination of the premises; found no gas jets open; and found no evidence whatever of arson; and he had no opinion as to what caused the fire. Thereafter, the defendant tendered the witness Williams, who testified that he had extensive experience and training in investigating fires and in determining their cause; that he examined the debris of the burned house and that it was his opinion that the fire started on the floor; that the burning pattern indicated that a petroleum product was on the floor at the time of the fire. Williams then testified that "he had examined the debris and saw the place had been set on fire"; and that "it was not an accidental fire." The Trial Court sustained objection to the foregoing and instructed the jury not to consider same for any purpose, and instructed the witness to state what he found without giving his conclusion.

■ We think the Trial Court probably erred in sustaining objection to the testimony of the witness Williams and in instructing the jury not to consider it for any purpose. A witness who qualifies by training and experience as an expert on the origins of fire, can, after investigation, give the jury the benefit of his opinion. The weight of such testimony is for the jury. Capra et al. v. Phillips Co., S.Ct.Mo., 302 S.W.2d 924; State v. Paglino, S.Ct.Mo., 319 S.W.2d 613.

■ The jury heard the witness say several times that "the place had been set on fire" (even though objection to such evidence was sustained); and heard the witness testify without objection several times that "inflammables" or "oil substances" had been "used" or "poured" on the floor. The witness further testified without objection that "he found nothing that could set off an accidental fire". Thus the jury had before it for intents and purposes the "sense" and

full effect of the testimony of the witness Williams. In view of the foregoing, and in view of the record as a whole, we think the trial court's action, if error, was harmless under Rule 434, Texas Rules of Civil Procedure, and could have in no manner "probably caused the rendition of an improper judgment in the case."

■ Defendant's 2nd and 3rd contentions complain of the action of the Trial Court in excluding portions of a prior written statement made by the plaintiff Lucy Lucher; and in refusing to allow cross examination of Lucy Lucher in regard to the prior statements.

After the house burned down, defendant's representative, (the witness Williams), took a statement from Lucy Lucher, which was signed by her. On the trial of the case defendant offered the statement in evidence. The entire statement is set forth below. The Trial Court, on objection by plaintiffs, excluded from the jury the italicized portions:

### STATEMENT BY
### LUCY HYMAN LUCHER
"Houston, Texas
January 26, 1959

"My name is Lucy Hyman Lucher. I am 48 years of age, having been born February 7, 1910 in Montgomery County, Texas. I presently reside at 9409 Grady St., Houston, Texas, with my daughter Dorothy May Mathis. I married Mike Leon Lucher October 21, 1925, at St. Joseph Catholic Church, New Waverly, Texas. I lived with Mike Lucher off and on for approximately 32 years, up until approximately September, 1958, at which time I left him. *On September 2, 1958 Mike Lucher came to my house which I was renting in Willis, Texas, and after I let him inside the house I could tell that my* *husband had been drinking and shortly thereafter he pulled his* [Excluded Portion # 1.] *pocket knife and cut the back of my neck clear around to my right cheek bone. I staggered out of the house and ran about 3 yards, fell, then got up and finally received some help in Willis, Texas.*

"I know that my husband is presently under indictment charged with attempt to murder in Conroe, Texas, for cutting me on the day of September 2, 1958.

"I lived with Mike Lucher at Willis, Texas, in a house we owned previous to the house which burned December 22, 1958. Mike tried to get me to burn this house on 2 different occasions. *Mike told me how to burn this house without be-* [Excluded Portion # 2.] *ing detected and explained that I should burn the house by turning 2 of the gas heaters on and then turning the other gas heater on and lighting the gas and to be sure and close all the windows and doors so that when the house filled up with gas that it would cause an explosion and burn the house. I told Mike I would not burn the house. However, he insisted that I burn the house to collect the insurance, but I would not burn the house for him.*

"About 2 years ago Mike and I traded this house for the one which burned on December 22, 1958, and this house is also located in the town of Willis, Texas. About a year ago I attended a bingo party with my 2 daughters at the New Waverly Catholic School, New Waverly, Texas, and this bingo party started about 8 in the evening on this particular night and broke up at 12 midnight.

"When I arrived at my house I found that a light was burning in-

side the house and when I got inside the house I discovered that one of our heaters was on but was not lit and the other heater was burning with the door propped against the heater, and I also found my woolen sweater wrapped around my electric iron and plugged into the wall outlet and was turned on to its highest heat. As I entered the house I could smell my woolen sweater burning and I ran inside and found my woolen sweater wrapped in the iron sitting in the back room and I unplugged the iron just in time to prevent an explosion because the room had been filling up with gas fumes. *A few minutes later after this occurred, my husband, Mike Lucher, came inside the house and asked me what happened and I told him you ought to know what happened because you caused it and he did not deny it.*

Excluded Portion # 3.

"*I do not recall the exact dates but I do distinctly remember Mike's looking to me and indicated that he intended to burn our house down to collect the insurance. When I heard about Mike's fire which occurred on December 22, 1958, it did not surprise me because he had talked to me previously about burning the house down.*

"I can read and write the English language and I have read this statement and it is true and correct.

"/S/ Lucy Hyman Lucher
Lucy Hyman Lucher."

(Below follows an acknowledgment)

Lucy Lucher was separated from Mike Lucher in February 1958 and went to Houston where she was living with a daughter when the fire occurred on 22 December 1958. After the fire, defendant's agents took the statement from Lucy Lucher. There can be no question but that the excluded portion denominated "Excluded Portion #1" above, was properly excluded. Such has no bearing on the issues involved except to impeach Mike Lucher's credibility as a witness. Since he had not been found guilty by conviction; and was not admitting his guilt at the trial, such was properly excluded. Texas & N. O. R. v. Parry, Tex. Com.App., 12 S.W.2d 997; Travelers Ins. Co. v. Jordan, (n. r. e.), Tex.Civ.App., 339 S.W.2d 235.

The portion denominated "Excluded Portion #2," we think, is cumulative of the prior sentence which was admitted into evidence. The whole conversation refers to another house and to a previous time. If the exclusion of this portion was error, we think same harmless under Rule 434 T.R.C.P.

The portion denominated "Excluded Portion #3", we think, was properly excluded; but if we be mistaken, we think such error harmless under Rule 434, T.R.C.P.

The court admitted the statement "Mike tried to get me to burn this house on 2 different occasions." Defendant's attorneys cross examined Lucy Lucher about this and she admitted signing the deposition, but further testified: "But I felt so bad I read through some of it, but didn't read all the way through"; and then flatly testified: "Mike ain't never tried to get me to burn no house down." Thus, both the statement that Mike tried to get her to burn the house, and her testimony to the contrary were before the jury.

In view of the record as a whole, we believe that if the court erred in excluding the portions denominated #2 and #3, same was harmless as heretofore noted.

The judgment of the Trial Court is affirmed.