Frank BUFKIN, d/b/a Southern Egg
Ranch, Appellant,

v.

TEXAS FARM BUREAU MUTUAL
INSURANCE COMPANY, Appellee.

No. 12–82–0008–CV.

Court of Appeals of Texas,
Tyler.

Sept. 15, 1983.

318

Kenneth J. Walker, Ewing Adams, Adams & Sheppard, Longview, for appellant.

Mike Patterson, Grainger & Patterson, Tyler, for appellee.

SUMMERS, Chief Justice.

This is an appeal from a judgment denying appellant Bufkin damages in payment of an alleged insurance claim occasioned by the total destruction by fire of a building and its contents owned by appellant and insured by appellee insurance company. The case was tried to a jury with arson being the sole defensive issue and the jury found against Bufkin. The trial court overruled Bufkin's motion for judgment non obstante veredicto, entered judgment based on the jury's verdict in favor of appellee, and thereafter overruled Bufkin's motion for new trial. Bufkin perfects this appeal.

We affirm.

The record reflects that Bufkin had been in the poultry business for several years in East Texas. He owned and operated Southern Egg Ranch which had been in business since 1973. Most of the buildings on the egg ranch were insured at one time with Texas Farm Bureau Mutual Insurance Company, appellee herein. Around July 1978 appellant's ranch was closed down due to financial losses and Bufkin allowed the insurance coverage to lapse on all but a couple of the modern buildings. One of the buildings upon which insurance was maintained was the processing plant, the building destroyed by fire and made the subject of this lawsuit.

The facts as developed at trial indicate that on July 8, 1979, the day of the fire, appellant visited the egg ranch for the first time in several months. Bufkin, his son and three workers came to the ranch and cleaned out the area in compliance with the insurance company's requirement that the insured property be properly maintained. Since the shutdown of the egg operation the processing plant was used for storage purposes; however, the record reflects it was not overpacked and nothing was stored in the aisles of the building, nor were any flammables such as gasoline or kerosene stored in the processing plant. The electricity and gas had been disconnected for some time prior to July 8, 1979. During the day of the fire Bufkin was in and out of the building, and late in the afternoon, he directed his son and a couple of the workers to go to the back pasture and mend a fence. Bufkin and one of the workers remained in the area of the processing plant, before joining his son and the workers in the field. Shortly thereafter smoke was spotted by one of the workers, and the record reflects that Bufkin instructed the others to continue with the work in the field while he went by himself to check on the fire. By the time he got to the burning building the fire department had arrived, had used all of their water and the building was completely destroyed. Subsequently, Bufkin submitted his claim for his loss to the insurance company. Such claim was denied on the basis that the fire was not an accidental one.

At trial, the insurance company had one expert, William Lute, who had extensive experience in fire investigations. It was his opinion that the fire was not accidental, but was intentionally set based upon the amount of spalling and hydrocarbon tracks found throughout the building. His testimony showed that spalling is the breaking up of a concrete surface that occurs after a flammable liquid is poured on the surface and ignited.

The single special issue submitted, and the jury's answer thereto, was:

Do you find from a preponderance of the evidence that plaintiff, Frank Bufkin, on or about July 8, 1979, started or caused to be started a fire on the premises known as the Southern Egg Ranch, with intent to collect insurance proceeds?"

Answer "We do" or "We do not."

Answer: We do.

At the close of the evidence Bufkin moved for a directed verdict based on no evidence being offered by the appellee insurance company; said motion was overruled. Bufkin then attempted to offer further evidence in rebuttal and moved for a second directed verdict, which was overruled.

Appellant contends: in his first point that there was no evidence to support the jury's finding; in his third point that the trial court erred in failing to grant appellant's motion for directed verdict; and in his fourth point that the trial court erred in failing to grant appellant's motion for judgment non obstante veredicto. These points all assert a no-evidence challenge and must be sustained only if there is a complete absence, or no more than a scintilla, of evidence that Bufkin started the fire or caused the fire to be started for the purpose of collecting on his insurance policy. *Freeman v. Texas Compensation Insurance Co.,* 603 S.W.2d 186, 191 (Tex.1980).

In reviewing no evidence points of error we must consider only the evidence and inferences tending to support the jury's finding of arson and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Travelers Insurance Co. v. Allen,* 554 S.W.2d 808, 811 (Tex.Civ.App.—Tyler 1977, no writ). If the evidence is indirect or circumstantial, this fact does not prevent an ultimate fact or finding from being shown. *Prudential Ins. Co. of America v. Krayer,* 366 S.W.2d 779, 780 (Tex.1963). All that is required is that the circumstantial evidence be reasonably satisfactory and convincing proof from which a legal inference can be drawn. *Texas Employers Insurance Association v. Clapper,* 605 S.W.2d 938, 942 (Tex. Civ.App.—Houston [1st Dist.] 1980, no writ); *Mobile Ins. v. Cone,* 457 S.W.2d 175, 176 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.). Texas Farm Bureau's burden of proof of proving arson at trial was by a preponderance of the evidence, and did not require absolute certainty that the fire was set intentionally. See *McMillen Feeds, Inc. of Texas v. Harlow,* 405 S.W.2d 123, 130 (Tex. Civ.App.—Austin 1966, writ ref'd n.r.e.); *State Farm Mutual Auto Ins. Co. v. Davis,* 576 S.W.2d 920, 921 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). It is only necessary that appellee prove that the circumstances point to the ultimate fact sought to be established with such a degree of certainty as to make the conclusion reasonably probable. *State Farm, supra; Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951).

Joe Anderson, the insurance agent for Texas Farm Bureau, testified that he had a conversation with Bufkin less than two weeks and perhaps just a few days before the fire. Anderson testified that he had noticed that the egg processing operation had been vacant since January 1979 and that he therefore notified Texas Farm Bureau not to renew the policy on the processing plant. When Bufkin was informed of such cancellation notice, he told Anderson that he was going to reopen the business with his son. The record reflects that prior to Anderson's testimony Bufkin had denied being told of the notice not to renew the insurance policy. He also denied that he told Anderson or anyone else that he planned to reopen the business. However, after Anderson's testimony at trial, Bufkin was recalled to the stand by his attorney and he admitted for the first time recalling the events as Anderson had related to the jury; however, he never admitted that he and his son had planned to reopen the business. It is evident that the jury could have easily inferred that Bufkin had intentionally misled Anderson into believing his egg ranch was not obsolete and vacant for the purpose of maintaining insurance. Moreover, it is interesting to note that at the time the smoke was spotted and Bufkin, his son and the workers were in the field, Bufkin instructed everyone to finish their work before joining him at the fire. Considering the unusual actions of Bufkin when others had noticed the fire and the quick and total destruction of the building, the jury could have easily inferred that Bufkin started or caused to be started the fire before returning to the pasture to join the others. In view of all the circumstances as developed at trial, it would have been almost impossible for anyone except Bufkin or someone at his direction to start the fire.

William Lute testified that he examined the remains of the fire eight days after its occurrence; that he had ruled out the possibility that an electrical fire, gas fire or the burning of a trash fire could have caused

the building's destruction. His testimony was simply that the fire was an extremely fast burning one, and it was his opinion that the fire was not accidental and it was intentionally set. Such opinion was based on his experience and his personal observation at the scene. Specifically, he noted spalling and hydrocarbon tracks on the concrete floor evidencing that a flammable liquid had been poured on the floor's surface and ignited.

Bufkin argues that the case of *Massey v. State,* 154 Tex.Cr.R. 263, 226 S.W.2d 856 (1950), is similar to the case at bar and urges that *Massey* supports his contentions that there is no evidence to sustain an arson finding. *Massey,* being a criminal case, is distinguishable from the case at bar because of the difference in the burden of proof required.

Our fact situation is similar to that found in *Garrett v. Standard Fire Insurance Co.,* 541 S.W.2d 635 (Tex.Civ.App.—Beaumont 1976, writ ref'd, n.r.e.). In *Garrett,* the appellant questioned the sufficiency of the evidence which included the testimony of an arson investigator. In that case, as in the case at bar, there was evidence that the insured had incurred financial losses. Unlike *Garrett,* in our case there was direct evidence that the insured Bufkin was at the scene of the fire not only on the date that the fire took place but within the hour of its origin. In both *Garrett* and the case at bar the incendiary origin of fire was proved by an expert arson investigator without laboratory evidence corroborating his opinion. The court noted in *Garrett* that it has long been held that arson can be established solely by circumstantial evidence because the very nature of the offense is often born in secrecy and executed in such a manner as to avoid apprehension. *Garrett* at 638. Viewing the evidence in the light most favorable to the jury's finding, we hold there is evidence of probative force to support the jury's finding of arson. Appellant's first, third and fourth points are overruled.

Appellant in his second point asserts that the trial court "abused its discretion in allowing the testimony of William Lute, the expert witness for the appellee." This point is so general that it fails to direct our attention to any error as required by Rule 418.[1] However, in disposing of the point we apply the liberal rule with reference to construction of points laid down in *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478, 482 (1943). At the time of trial Mr. Lute was a fire consultant engineer for AID Engineering in Dallas. For more than twenty years he was employed by the Dallas Fire Department, serving as captain and as chief of its arson and fire investigation division before his retirement in 1979. He has taught fire related courses at Texas A & M University and Texas University. Appellant contends that Lute's testimony lacked probative value, arguing that "Lute was making an inference upon an inference upon which to base an opinion." Our review of the record does not reflect that Lute relied upon hearsay in forming his opinion. On the contrary, as stated in his testimony, his opinion was based upon the physical evidence which he personally observed at the scene where the fire occurred. The test of whether an expert's testimony expresses a reasonable probability as opposed to pure conjecture that an event occurred is not based upon the semantics of the expert or his use of any particular term or phrase but rather is determined by looking at the entire substance of the expert's testimony. *Ralph v. Mr. Paul Shores, Inc.,* 572 S.W.2d 812, 814 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.), citing *Otis Elevator Company v. Wood,* 436 S.W.2d 324, 331–332 (Tex.1968). Lute testified that he personally observed the spalling and hydrocarbon tracks and took photographs that clearly demonstrated what he observed. There is no other evidence that explains the white and black stains on the concrete. Lute's opinion constituted more than conjecture; it was evidence of the cause of the

---

1. This and all other references to rules are to Texas Rules of Civil Procedure unless otherwise noted.

fire. The factual basis upon which an expert reaches his conclusion goes to the weight of the testimony and not to its admissibility. See *Tenngasco Gas Gathering Co. v. Fischer,* 624 S.W.2d 301 (Tex.Civ.App.—Corpus Christi 1981, no writ). Moreover, even if some portion of Lute's testimony was inadmissible, Bufkin has not shown that its admission was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434. *Swetlick v. Davis Oil Co.,* 616 S.W.2d 660, 662 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Garrett, supra* at 638. Appellant's second point of error is overruled.

■■■■ In his fifth point appellant contends that there is insufficient evidence to support the jury's finding and that said finding is against the great weight and preponderance of the evidence. Appellant contends that the insurance company did not make a prima facie case of its arson defense and that no evidence of a direct or indirect or circumstantial nature linked Bufkin to the cause of the fire. In reviewing a point contending that the evidence is insufficient or against the great weight and preponderance of the evidence the court will consider and weigh all the evidence introduced at trial. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Garza v. Alviar, supra* at 823. In order to sustain Bufkin's point that the evidence was insufficient to support the arson finding of the jury, or that such finding was against the great weight and preponderance of the evidence, Bufkin would have to demonstrate that the finding was so overwhelmingly against the evidence as to shock the conscience or show clearly that the conclusion reached was wrong or was a result of passion, prejudice or improper motive. *Burk v. Matta,* 529 S.W.2d 591, 595 (Tex. Civ.App.—San Antonio 1975, writ ref'd n.r. e.). It is within the sole province of the jury who had the opportunity to observe the demeanor of the witnesses on the stand, adjudge each witness' credibility and then decide the weight to be given their testimony to resolve any conflicts by believing part of the witness' testimony while rejecting other portions. *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273, 276 (1958); *Southwestern Bell Telephone Co. v. Griffith,* 575 S.W.2d 92, 101, (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). A review of the entire record shows that there was sufficient evidence of probative force linking Bufkin to the cause of the fire and that the jury's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, appellant's fifth point is overruled.

■■■■ Appellant in his sixth point of error contends that the trial court erred in excluding, at the hearing on appellant's motion for new trial, evidence offered by appellant of the results of a polygraph test given to Bufkin and the opinion of the polygraph expert based thereon. Upon objection by counsel for the appellee the trial court refused to consider such evidence, and Bufkin's counsel thereupon perfected a bill of exception in accordance with Rule 372. The general rule in Texas is that results of a polygraph are not admissible in civil suits. *Tex. Farm Bur. Mut. Ins. Co. v. Baker,* 596 S.W.2d 639, 643 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.), and cases cited therein. It is Bufkin's position that the trial court should have at least admitted the evidence at the hearing on the motion for new trial and weighed it along with other evidence adduced during the proceedings. We disagree. We find no error in the court's refusal to admit the polygraph test. Appellant's sixth point of error is overruled.

■■■■ Appellant in his seventh, eighth and ninth points contend that the trial court erred in denying appellant's motion for new trial because there was proof of jury misconduct that resulted in harm. In reviewing these three points we are guided by the rule that a new trial will not be granted on the grounds of jury misconduct unless it is shown by a preponderance of the evidence that material misconduct actually occurred which probably resulted in harm to the complaining party. Rule 327. *Strange v. Treasure City,* 608 S.W.2d 604, 606 (Tex.1980); *Womack v. First National*

*Bank of San Augustine,* 613 S.W.2d 548, 557 (Tex.Civ.App.—Tyler 1981, no writ). An inquiry into alleged jury misconduct is a question of fact. *Strange, supra.* Where no findings of fact are requested or filed, as in the case at bar, it is presumed that the trial court found every issue in favor of appellee Texas Farm Bureau and against appellant Bufkin. *Norman v. First Bank & Trust of Bryan,* 557 S.W.2d 797, 803 (Tex. Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Bufkin's contention that the words perjury and guilty, if used in jury deliberations, constitute misconduct is nothing more than a quarrel with the manner in which the jury judged the credibility of the witnesses and the weight that was given to their testimony. Such quarrel invades an area which is within the sole province of the jury. *Southwestern Bell, supra.* Bufkin is attempting to destroy the jury verdict by using the testimony of Vicki Warr, one of the two jurors who did not vote with the majority, regarding the mental processes of the jurors in reaching their decision. As the credibility of the witnesses and the weight to be given their testimony is within the sole province of the jury, it has consistently been held that a juror cannot destroy a verdict by testimony as to the mental processes used in reaching that decision. *Cortez v. Medical Protective Co. of Fort Wayne,* 560 S.W.2d 132, 137 (Tex.Civ.App. —Corpus Christi 1977, writ ref'd n.r.e.). Another juror, Mrs. Copeland, testified that she did not recall the word "perjury" being used and therefore there existed a conflict with Vicki Warr's testimony. When there is a conflict in evidence on the issue of jury misconduct, the finding of the trial court is binding on the appellate court. *Strange, supra.*

Although it was uncontroverted that the word "guilty" was used during jury deliberations, the trial court was entitled to weigh Mrs. Warr's credibility in connection with her testimony. *Rosales v. Argonaut Insurance Co.,* 551 S.W.2d 511, 513 (Tex.Civ.App.—San Antonio, 1977, writ ref'd n.r.e.). Her credibility was subject to question after she admitted under cross-examination that not everything contained in her sworn statement was true. Even if the words "perjury" and "guilty" were used, Mrs. Warr testified that neither a criminal background nor a criminal sanction was necessarily attached to the trial by the jurors. Bufkin has shown no clear abuse of discretion by the trial judge nor any harm resulting from the trial court's ruling. *Shop Rite Foods, Inc. v. Upjohn,* 619 S.W.2d 574, 582 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

Vickie Warr's testimony that a juror changed her vote simply because she wanted to go home was contradicted by both Mr. Rogers and Mrs. Copeland. Mrs. Warr also testified that she did not believe all the jurors had read the court's charge. Bufkin contends that the failure of all the jurors to read the charge is jury misconduct even though the charge was read to the jury before argument. The trial judge had an opportunity to observe Warr's demeanor while testifying and could also consider her disagreement with the jury's verdict in assessing her credibility. *Rosales, supra.* A review of the entire record indicates that if there was juror misconduct, it probably did not result in harm and should not result in the granting of a new trial. *Walker v. Texas Employer's Ins. Assoc.,* 155 Tex. 617, 291 S.W.2d 298, 302–303 (1956); Rules 434 and 503. Accordingly, appellant's seventh, eighth and ninth points are overruled.

The judgment of the trial court is affirmed.